Why don't we begin with the government's counsel, Mr. Jed. And then how much time will you reserve? Mr. Jed? I may reserve three minutes for rebuttal, please. That's fine. All right. Why don't we proceed? Good morning, Your Honors. Adam Jed for the federal government. May it please the court. First, of course, I'd just like to thank the court for the courtesy of proceeding by zoom for this claim that when Medicare beneficiaries are provided a certain kind of outpatient care in hospitals called observation care, that those hospitals have deprived the beneficiaries of property without due process. The district court rejected that claim and plaintiffs have not cross appealed. After the close of evidence, however, the district court honed in on a particular sequence of events that was mentioned in passing at trial, where someone is initially admitted as a hospital concludes that that was not medically necessary. The hospital changes that patient to being an outpatient, and then prospectively provides observation services. Now, even assuming that the post trial change in class definition and claim that the class definition itself, and that the class wide factual findings were correct. Nonetheless, in our view, the district court erred. Among other things, just as a simple matter, when anytime the government establishes criteria for payment, it is commonplace that any party will respond to that criteria of payment, both by being careful about what they actually do, what kind of treatment it is that they engage with, and by trying only to submit bills that are properly payable bills. That does not constitute state action. I haven't heard any argument from the that either their position or the position ultimately adopted by the district court would filter out any number of those cases. Why isn't this case very much like Kramer and Well, Judge Calabresi, I think we have a couple of responses to that. And they're probably a little bit different for Kramer. And so, as for Kramer, I think there are three main points to keep in mind. The first is just as an initial matter, I think Kramer itself actually placed an express limit on its holding. If you look at page 219 of the decision there, just to quote a couple of things that the court said, the court said that, quote, the record is insufficient. It said it was not ruling, quote, conclusively. It said that there just appears to be a, quote, stronger basis than there was for state action in Blum. So I think the best way to understand Kramer is essentially just a recognition that whether their state action is a normative question, that sometimes it's a little bit of I know it when I see it. And essentially, Kramer said, you know, this case isn't exactly identical to Blum. There are a lot of facts that may very well be relevant that we don't have in the record. And so, there should be more factual development. Now, second, I should say with respect to Kramer, the court there honed in on a couple of differences between that case and Blum. And I actually think those differences underscore why there wouldn't be state action in this case. In particular, on pages 220 to 221, the court there suggested that there's virtually no room for medical judgment. Among other things, the court, again, identifying that the record was insufficient to rule conclusively. But it pointed to the fact that some of what could trigger the change there was controlled by, I think, the language the court used was numerical and statistical measures. So that's, I mean, basically, the obvious. But at least with respect to the two midnight rule, is there any real level of judgment here? Or is it just as automatic? That is, you know, I think it might be, I'm not even sure whether the 24-hour rule is the same as the district court quickly said. That's a question for me. But as to the two midnight rule, isn't that every bit as automatic as what was going on in Kramer and Cuttin's own? You're just calibrating quite the opposite. The two midnight rule, and I think this is established both by the text of the rule and the record itself, is steeped in judgment. I mean, if I can point you to the text of the two midnight rule itself, it's about whether the doctor expects the patient to require hospital care crossing two midnights based on complex medical factors, such as patient history, comorbidities, severity of signs and symptoms, current medical needs. But how is it being actually applied? See, it may have said that, but my problem is looking at the record, it looks to me as if it's really as a practical matter. They do it mechanically, which is the kind of thing which, in fact, Kramer was saying. That's why it's different. That's why each case is somewhat on its own, almost a judgment by the district court as to whether this is mechanical or not. Well, Judge Calabresi, I think three responses to that. First, I read the record very differently. In fact, I don't think there's anything in the record that suggests this is a kind of judgment-free mechanical application. If you look only at two record sites, I would point you to A1385 to 1386. That's testimony by a case manager, and A1560, that's testimony by a doctor who's one of the world's leading experts in observation care. But we cite a number of other descriptions of the two midnight rule in our brief, and I don't think any of them suggest that this is something mechanical. But second, Judge Calabresi, what I would just say is, kind of setting Kramer aside for a moment, Kramer wasn't this court's last word on the matter. This court's last word on the matter was the en banc decision in Albert, which makes clear, I think, that as long as there's any role for judgment, even if there were sort of precise rules that were handed to the private party, nonetheless, there wouldn't be state action. But finally, I would just say, Judge Calabresi, even if you think that there could be circumstances where the two midnight rule somehow turns into a mechanical set of standards, and I don't even know what those would be based on the text of the rule itself, the district court obviously made a class-wide finding. So you would have to think that that's universally the case at every single hospital in every single application, and that just as a procedural matter is an error. Well, that's one question. Judge Calabresi, the other question I have here is whether the, it seems to me that you've got the, that would be a correct discussion if we're talking about the analysis for going into the hospital. But the classes that's set up now are people who've been taken away from Part A and put in Part B. And once that's done, the two midnight rule is a given, right? Because it was there, obviously they wouldn't have been able to get in Part A. So now it's a question of whether they, if it's been satisfied in that regard, then what is left? Because the way the case is shaped now when they're moved into Part B. Judge Walker, if I'm understanding your question correctly, I think there are just a couple of things to flag. The first is even to have been initially admitted, it doesn't necessarily mean that the two midnight rule was satisfied. As we just said, doesn't the doctor make that determination? So Judge Walker, the doctor makes the determination to admit the patient initially. As we point out in the brief, first of all, you could, of course, theoretically have a doctor who admits a patient, even if medical admission is not medically necessary. Sometimes doctors just have their own reasons that they want to admit a patient. But more importantly, I just want to point out, and this is pretty clear in the record, at least some doctors have explained that admission is a bit of a process that if there are certain times of day where there's not staff to sort of help and figure out whether the two midnight rule is satisfied, they may just admit and then there will maybe further discussion in the morning that some hospitals have more kind of upfront review, some hospitals have more review that happens after someone is admitted. I'm sorry. Let's return, Vo, to what the issue is. The issue isn't whether people are properly in or properly out. The issue only is whether a minimal amount of process is due them, a process that is done in any number of other situations here, as when Medicare decides at a certain point that they're not going to pay and so on. So, you know, in terms of where if we were stretching, we should stretch, shouldn't we stretch to say that a minimum amount of process could be given and could be given easily? And in that sense, I'm not saying that we can do that if there isn't state action, if there isn't this, but in a situation of doubt, shouldn't the burden really be very heavily on you to say that this can't be done? Well, Judge Calabresi, two responses. First, obviously, not every decision that is similar to any other decision is constitutionalized. And so long as there's not state action and not a deprivation of- There isn't state action, that's so. I'm just saying, you know, if we are close and balanced, which way should one go when what is at stake is some people losing very important benefits automatically and of the other just being a chance to argue? Well, Judge Calabresi, if you're in balance about whether there's state action, if you're in balance about whether there's deprivation of a property interest, I think that's reason to find that neither of those are satisfied, both because it's the plaintiff's burden as the plaintiffs in this litigation. And I think as the Supreme Court has spelled out pretty clearly in a number of recent cases, we want to be very careful about constitutionalizing what are otherwise just these kind of private transactions and private medical decisions. And what's wrong with the district judge's determination on state action? Well, Judge Walker, I think the district judge made a number of errors on state action. And, you know, to be fair to the district court, I think some of this is a consequence of the fact that this theory of state action ended up emerging post-trial. I think first, as we point out, the state action inquiry is ultimately a normative one. I have not heard any explanation for why it is that what the district judge concluded is state action here would be even taking all of this factual findings is correct, would be anything other than the fact that private parties respond to billing criteria by being careful not to submit unpayable bills. And if we point out in our pie brief, the plaintiffs themselves, I think it's pages 52 to 54. I thought his analysis focused on the URCs and whether the URCs were effectuating state action and that he found that that was the case having in line with these other cases that Judge Calabresi mentioned. And that was his finding. Now, is there a problem with that finding based upon the reconfiguration of the case at the end? Yes, Judge Walker, there is. I mean, I should just say as an initial matter, not all URCs are the same. There is virtually nothing in the record about how utilization review committees operate. And as a consequence of this kind of post-evidence reconfiguration of the case, the court ended up making these factual findings about URCs with virtually nothing in the record about it and with no notice to the government to be putting on evidence about URCs, about this particular reclassification process that itself has certain rules. As we pointed out, the judge cited a Medicare manual that wasn't even in the record in the case. And that Medicare manual actually shows why it is that the treating physician would have to be involved in and approve this. And I mean, one of the sort of three main categories of error. Hold on one second. Mr. Jed, what exactly is wrong with relying on that manual? Judge Calabresi, we're not saying that there was anything intrinsically wrong about relying on the manual. I think we're just pointing out that in so far as the manual wasn't actually in evidence in the case, that just goes to show that the parties weren't focusing on this particular reclassification process. I mean, it really is barely mentioned in the record. It just happens to come up in passing. Well, if you're saying that it was unfair to make the class narrower, although making the class narrower seems to make sense of merits of a broader class, you would have attacked, I think, quite dramatically. But if that is so, what is it the government would want us to do? What is it you're asking us to do? I mean, if that is the issue, what is it you would want us to do? Judge Calabresi, I think the answer there is to reverse rather than vacate and remand. But it may actually depend on a little bit of a subtlety in your questions, if I could just spell that out a little bit. Our view is that the court narrowed the class definition. The court also changed the case. Among other things, the court focused in on this retroactive treatment as an outpatient, which has nothing to do with placement on observation at all. And in so far as the court changed the case, the plaintiffs lost the case that they brought. They didn't cross appeal. And they shouldn't be entitled to a second bite at the apple, essentially, to get to litigate a completely different case because the court created this new case. But if I'm wrong about that, then I think ultimately this becomes a procedural question. So if, in fact, the final judgment was entirely the case that the plaintiffs had brought, our view is nonetheless the plaintiffs just put no evidence on about that case. There's nothing in the record that explains the criteria for reclassifications or anything else that could support the final judgment. And again, obviously, a litigant is the master of the case that it puts on. And if they didn't put on evidence to support that final judgment, then simply put, the thing be reversed. If, instead, the issue is- Hold on one second. And you'll be able to go back to where you were in a second. But to follow up on Judge Calabresi's question, this case has been going on for, well, a generation, for over 20 years. What is it that you now would want us to do in this case? What, in this very case, would you have us, if we are to remand, what is it that the district court is to do in your view? Well, you know, obviously, Judge Cremantes, we're hoping that the court would simply reverse. You've said that. But suppose we don't agree with you on that, but are sensitive to your notion that this wasn't altogether fair, this narrowing. What would you want us to do then? If the issue were solely one of fairness, and the court thought that the plaintiffs had put on a case that could have supported this claim, that obviously, in our view, wasn't part of the case, and the issue was simply some kind of unfair surprise, then at that point, you know, potentially, the case would have to be retried. Obviously, I'm very reticent to push for that, given that this case has been going on for so long. It wouldn't have to be redone in its entirety. It would be focusing on whether or not you would presumably identify ways in which you were prejudiced by the reconfiguration of the case. And then those would be addressed at another hearing. The trial itself was not that long. And, you know, I suppose you'd need to hear from a URC member or something of that sort. And there'd be litigation over whether or not this is an appropriate class. Judge Walker, potentially, that's right. I think, among other things, we're very concerned that this may not even be able to be tried as a class action, that to the extent the district court's theory hones in on this idea of how URCs are influenced by HHS, or doctors are influenced by URCs, that that varies from case to case. And so I think, among other things, we would hope that that's something that's something that wasn't really pointed out at the trial, because of the reconfiguration, you never made that point. Maybe the other side would have to somehow deal with that. I'm sorry, I didn't mean to interrupt, Judge Walker. No, that's all. That's all. It seems to me that it is capable of being retried in ways that would take away the unfairness of the surprise that you say you had. Well, Judge Walker, on the class certification issue, there was extensive litigation on class certification. And although the district court changed, we think, the case theory at the end of trial, among other things, in a motion to decertify the class, we explained why it is that there's just variation in everything that happens on the ground, and why that then means that this is not a triable class action. How much should we take into account the fact that this has been going on for a generation, that you've already survived one judge of this court, and you have three very old when the issue ultimately is a fairly simple one, whether a hearing should begin? Judge Calabresi, you know, of course, obviously, the duration of this litigation doesn't affect the ultimate disposition of the legal questions. But I think it could be relevant to your consideration in two different ways. The first is because this litigation has been going on for so long, we would ask this court if possible to reverse or if not to provide some extensive guidance that would prevent this case from going on for a second generation. The other thing that I would just say, Judge Calabresi, is I think your question underscores the fact that these sorts of issues, this may be kind of, wouldn't it be great if people had access to a hearing in a particular circumstance, or sometimes issues that are better dealt with either through regulations or statutes, Judge Calabresi, the type of hearing that you asked about before is one that's required by statute, not because due process requires it, but because people went to Congress and said, hey, you should require this kind of hearing. And that may ultimately be the better way to address the sorts of policy concerns. And by the way, some of these policy concerns have already been addressed. I mean, when this litigation began, as I understand it, the plaintiffs were deeply concerned that sometimes someone could end up in the hospital on observation for a very long time. Because hospitals were deterred, they were worried that if they admitted someone improperly, that the hospital might be out of pocket. Over the course of this litigation, among other things, the two midnight rule has provided much more guidance and deference to hospitals. And there's now a rule in place that if a hospital submits an unpayable Part A claim, they're not out of pocket. If it's denied, they could then ultimately just resubmit the thing after the fact under Part B. So even in the generation, Judge Calabresi, that you asked about, I think a lot of the concerns that drove this litigation have been addressed. Thank you. Hospitals can appeal, right? Hospitals can appeal under the current regime, right? If HHS denies a claim that is submitted to it by a hospital, then a hospital has an appeals mechanism. Right. And there's also an appeal process, standard appeals process. My understanding is that a party to an initial determination has a five-step appeal. That was in the lower court's opinion. Right. Yes. But just to be very clear, that's not an appeal that actually changes what the doctor does if ultimately a patient succeeded in that appeal. And again, that's an appeal that is required by statute, not as a matter of due process. But if they succeed, essentially, they get an advisory opinion from HHS that basically says to the hospital, if you did decide that you thought it was still medically necessary to keep this patient, that is a claim that we would pay, that we wouldn't disagree with that conclusion. So that's actually quite different than the sort of process that the district court would consider. I think that goes to what Judge Calabresi's concern is, that there are appeal mechanisms in place that could be modified slightly to accommodate the plaintiff's interests. And I'm surprised that you haven't negotiated or tried to work that out in some way. Maybe you have. Judge Walker, as for the kind of complexities of establishing the is a lot of evidence in the record. As we explained to the district court, it would take a tremendous number of resources just to set these things up in the first place. Some of that is now before the district court in post-judgment litigation. And indeed, I think this panel has seen at least hints of that in the declarations that were attached to the state motion. Thank you. Let me just add one more question, and that is whether you were shifting of the case after the trial. I'm concerned about the unfair supplies issue. Yes, Judge Walker. I think we spell out in our brief and sort of point to our district court filings about potential prejudice here, among other things. Obviously, I don't want to speak precisely for the trial team, but I think among other things, since the court focused in on reclassifications that have to be approved by utilization review committees, we would have put on evidence about reclassifications and utilization review committees. We would have put on evidence about the relationship between HHS and these URCs, about the relationship between URCs and treating physicians, about the fact that it seems that in places the district court kind of maybe missed that these reclassifications actually do need to be approved by treating physicians. Possibly how the two midnight rule gets used by utilization review committees. These are all touched on in the trial record at all. I'm going to ask your adversary about that. And you'll come back, Mr. Jett, for sure. Thank you, Your Honor. And we'll reflect further on what we've heard so far. You've been the beneficiary of 15 plus extra minutes. Let's hear from Ms. Burrs of the Willimantic Connecticut Bar. Good afternoon, Your Honors. Alice Burrs, representing Plaintiffs Appellees. When Plaintiff Martha Liana had to go to a hospital after a fall at home causing pain and immobility, she and her family were not thinking about which part of Medicare would be covering her hospital services, and they were not expecting a surprise medical bill for the nursing facility services her doctors said she needed after her hospitalization. But whether Medicare covers a hospital stay under Part A as inpatient services or under Part B as outpatient observation services can have a life-altering effect for the beneficiary as it did for Ms. Liana. When the hospital reclassified her from her initial inpatient status, Ms. Liana was deprived of a three-day Part A hospitalization even though she was in the hospital for more than three days. So she could not get Medicare coverage for her rehabilitation services in a nursing facility, and despite dogged efforts by her family, she had no way to appeal to Medicare for that coverage. Okay, now you've talked, this goes right to the merits of the case, and what I'm concerned about is whether there was appropriate, whether the way the judge handled the case was appropriate in terms of reconfiguring the case at the end and not taking, not having direct evidence from the URCs and how he went about making his findings and whether or not the government was prejudiced in its ability to present its case so that the proceedings would have been fundamentally fair. Yes, Your Honor. So, yes, a few points on that. First, the case always included beneficiaries whose status was changed from inpatient to outpatient receiving observation services. That's in the complaint. We respectfully disagree that status changes or reclassifications were not discussed at trial. Every time there was a discussion about who has the final say, about how it's discussed, are you saying discussed by witnesses? Correct. Were there witnesses who testified to the reclassification issue? Yes, well, every time there was a discussion about who had the final say as to how a claim would be submitted to Medicare or what happens in a disagreement between a doctor who has admitted a patient as an inpatient versus what happens once the claim goes through the utilization review process, that was logically in contemplation of a, those are situations that are logically in contemplation of a status change. Furthermore, we already know what physician advisors who perform utilization review are tasked with doing. They must apply Medicare's mandatory standards for Part A payments. They are under obligation to submit correct claims based on statute regulation and guidance. That's what one of the government officials. Let me tell you what my problem is. Well, the class that was then certified, narrowed in this way, includes also people who were admitted not under the two midnight rule. Now, is the same thing we say about those people? What, in discussion with opposing counsel, I said about the mechanical application of a two midnight rule. What about these other people? The district court very quickly treated people under the 24-hour rule, the previous one, as if it was exactly the same as the two midnight rule. Is it? Now, you know, in itself, that may not be that much of a problem, but it links in to the question of whether the change in definition of a class was done with sufficient care and with sufficient accuracy. You know, I'd like to, I'd like to get this case over and done with, because it's been there so very long, but that's what, where my worries are. So your Honor's referring to the plaintiffs whose hospitalizations preceded the two midnight rule, then that would be under the 24-hour benchmark. And what the district court found was that there wasn't a big change between that 24-hour benchmark and the two midnight rule, that the two midnight rule essentially provided further clarification on what that benchmark was. And as for objectivity and whether that's applied objectively, the court found several indicators that these standards are applied objectively, even though there is some medical judgment included in the application of the standards, so that it could be the basis for the protected property interest, that both are, that these standards are applied with a reasonableness standard, that that's what Medicare expects when it is reviewing a claim, it is applying a reasonableness standard, that the review is limited to the medical record, that the, that when hospitals can and do appeal denials of their claims, that they are appealing to non-physician administrative law judges and sometimes federal judges who are not trained as doctors, that Medicare expects a high degree of consistency and accuracy from its contractors and its hospitals. And this can be seen in the one-on-one provider education sessions that are in the record and in the sealed documents where Medicare was. But, but that is so, is fine, but the question before us is, is that degree of certainty sufficient so that there is a property interest which gives rise then to this constitutional claim? And that may be a little bit different from the question of whether there is enough guidance so that you can get the kind of view which you do have in the others. Our question is a more can describe this as a property interest rather than something that is based on discretion. Yes, your honor. So besides those, those factors that I just mentioned, the agency did, did reduce the, the two midnight rule, for example, to a flow chart, which is sometimes refers to as an algorithm that's in the record at A2997, which it uses, which it directs its contractors to use in order to apply its standard for Part A coverage. It also, the court district court also found that the agency unambiguously requires conferral of the benefit to those who satisfy the criteria. And that's the other aspect of the agency meaningfully channeling official discretion such that a protected property interest is required. So between the, the, the criteria themselves and the conferral of the benefit being mandatory, the court found that there is a, a standard that creates the protected property interest. And what that standard then does is what class members want to do is what made pursuant to a reasonable to midnight expectation. Okay. Yes. I'm concerned about the government, the government saying that they, they were a little bit sandbagged by this final decision and they didn't, they didn't put enough evidence at least on the URCs and the, and the way in which the decisions are made to reclassify from Part A to Part B. And that's, that's what I I'm concerned about. They say they were prejudiced and I want to know whether why you think there was enough evidence to support the district court's determination when no member testified? Well, just one thing that one of the witnesses was a non-physician member of, of a URC locks. Yes. Yes. So, so a couple of points, your honor, we, we, as we do already know what physician advisors who perform utilization review are tasked with, and that, that can be seen in the direct intervention of Medicare with hospitals in the one-on-one provider education sessions where they are directly reviewing with hospitals individual claims. Counsel, I have a question on this, which is in some way better addressed to opposing counsel. And I'm going to ask that too. Did the government ask at the time that the class was redefined to have more time and be able to bring in witnesses? Did they at that point ask for more or did they not? I'm sorry, your honor. Are you talking about post-trial? No. Trial is over. The, the district court redefines the class. Did the government at that point say to the district court, okay, but before you do this, we want to bring in some witnesses because this is something that we didn't expect. I mean, they're claiming surprise, they're claiming that they could have brought in witnesses. I want to know if they asked the district court for that or if they're asking us that in the first instance. No, your honor, that, that, that did not happen. Nor, nor, nor did it happen earlier when, when the, when the court was had, the court did several, there were, there were some, there were several iterations of the, of the class definition. And, and that, that, that was not a request by the government. Also, the, the, the evidence that I think that the government is proposing would not change any of the, of the, of the district court's outcome determinative findings on plaintiff's due process claims. That findings that apply across the board, that Medicare requires all hospitals to have a status changes to be channeled through that plan, that Medicare directly intervenes, that Medicare requires hospitals to apply its standard for part A inpatient claims, that the court also found that doctors in inpatient wards view this distinction as a billing compliance matter. And for that finding, it cited both the plaintiff's expert witness, the secretary's expert witness, as well as CMS itself. And also that the utilization review determinations effectively deny part A coverage. So in light of all of those factors, it was not a surprise that the district court concluded that when a patient is reclassified, that is caused by state action, the legally mandated utilization review process. There would be no other reason for it to happen. And that is much more than the risk that is much more than responding to criteria that that the government has proposed that is much more than responding to billing criteria. That is a legally mandated system that Medicare requires. And that can certainly be seen in in the direct intervention and reviewing of individual cases with hospitals to make sure that its claims meet the standard that it has set. Thank you. So I would I would also say that the that in terms of the standards themselves, what we we do have the creation of a protected property interest by both the both the two midnight rule and the 24 hour benchmark as as the as the court found that the inclusion of some amount of medical judgment does not does not mean that there can be no creation of a protected property interest. And as for ultimate authority, as the government was talking about in the Albert case, there is no evidence that treating physicians have the ultimate authority and how a claim is billed to Medicare, which is the decision at issue in this case, because that is what determines coverage. That I have the secretary has established a standard that his agency enforces for when a Medicare beneficiary can receive Part A coverage. And we are asking this court to recognize that class members do have a right to be heard on whether they have met that standard and to affirm the district court's decision. Let me ask you a question about the right to be heard. Are you asking for the five step procedure? Or are you asking for just a single a single review by one person? And and that's it. Thank you, Your Honor. It's actually the procedures that mirror the administrative remedies normally available to Medicare beneficiaries. So that is the standard appeals process, which is the five step procedure that you mentioned, as well as for beneficiaries who are hospitalized, the expedited procedure, which allows you to pursue the beginning steps of the appeal procedure while you're still in hospital. That's very important for the particularly vulnerable group of beneficiaries who cannot afford to go to a nursing home without the Medicare Part A coverage that they are seeking. So what would happen in the interim while they while while that litigation is going on, if it's an emergency, because presumably, there would be an appeal to the to the appeals council, and then perhaps, perhaps to a district court. Well, in on the expedited appeals, Your Honor, it's only the first two levels that are expedited. And that that does literally happen within a day or two on so that you can get an answer. Right. But do you need what happens? The patient does sometimes lose? Yes. Yeah. And that's the end of it. Yes, I think it can it can proceed at that point. But at that point, the the the financial liability protections aren't there anymore. But do you need us to say, what kind of procedure needs to be set up? Or do you need us just to say that some degree of procedure, which meets the requirements of Matthews v. Eldridge is there, and then let that be decided, which presumably can be done even amicably at that point? Well, Your Honor, I think that the the court's order spells it out. The court's order spells out that it the the the processes that that would be due, and the district court did find that the the processes would be those that are currently available to Medicare beneficiaries that would be both the standard appeals process. Yes, yes. And that and that that is something that that all class members can benefit could could the expedited in the in the short amount of time during hospitalization, standard appeals process would would be beneficial for someone like Miss Leanna, who I mentioned to who did have spent her own money for the nursing facility services that she received. Thank you. Judge Walker, any any questions for? No, I'm I'm, I have no further questions. All right. You've given her a little bit of extra time, not as much as Mr. Jed, but he he gets the treat. And he quit. Go ahead, Mr. Jed. Thank you. Just a couple of quick points. First, on the I believe asked whether we had argued to the district court about prejudice, or we're just saying it for the first time on appeal. We did we spelled this out at pages 45 to 46 of our opening brief. And if you look in the appendix at pages 718 to 723, that was us spelling out to the district court exactly why we believe that there would be prejudice. Judge Walker, did you do it after the judges after the judge's opinion? That's my question. We did not file a motion for reconsideration after the final judgment. When the court asked some questions that made it look like maybe it was going down some path like this. That's when we flagged why it is that we would be prejudiced. Judge Walker, I believe you asked. Just a second. But did you ask say, okay, but we want to bring in witnesses. We want to do this. Can you reconsider and do this? Did you make the kind of finding that would have enabled this kind of motion that would have enabled the district court to do on this issue what you are asking us now to order? We spelled out the kinds of evidence that we would have put on had this been the claim in the case from the get-go. We did not ask for a further hearing because normally a complaint cannot be constructively amended after a trial. We explained why it is that under this. I know you claimed that you had an issue of law and that that was wrong. And if you're right on that, that's fine. But if instead it was a question of which such changes can be made so long as there is no prejudice and so long as it doesn't keep facts that are important from being there, I want to know whether you gave the district court, which presumably disagreed with you on that question of law, which we'll have to decide a chance to bring in these other evidence, this other witness. So if you look at pages 718 to 723 of the appendix, we spell out the kinds of evidence that we would have brought in. But at the end of that, Judge Calabresi, we did not say, therefore, please reopen the trial. Instead, we just said, therefore, this would be an improper change in the complaint. Judge Walker, you asked whether this was part of the case in the first place. There were only two brief mentions at trial of reclassification. And if I could actually point you to page 1777 of the appendix, that's there the district judge himself saying, albeit mistakenly, that this case is about placement on observation from the get go. And I think the fact that the district judge would make that error just goes to show what virtually all of the evidence in trial was actually about. If you look at the complaint, it talks about placement on observation. The ultimate judgment in this case then includes this kind of retroactive change. If you look at SA99, that's the class certification decision, which says that regardless of the I'm sorry, Judge Walker. No, I didn't say anything. Oh, if you look at SA99, that's the class certification decision that says regardless of the circumstances of how they've been placed on observation, the issue is the same. So I think that just shows the ways that the case changed. Just to briefly touch on two other issues that came up. One is the various members of the panel had colloquies with my friend about the amount of medical judgment that ends up being involved in this. And my friend pointed the panel to A2997, a sort of step-by-step flow chart. You can have a step-by-step analysis, as we point out on pages 26 and 27, our reply brief, even if it's a step-by-step analysis that involves substantial use of individual judgment. Step one, look at the relevant information. Step two, apply that information to the facts here. Step three, exercise your judgment. I mean, at a high level of generality, that is essentially what is going on in that flow chart. Third, I do just want to point out, I think Judge Calabresi had a colloquy with my friend about the two midnight rule and the the two midnight rule wouldn't justify a property interest in, I think the term used there was inpatient admission. So any theory of a property interest has to depend on the idea that at the moment an admission order gets put in the file, at that moment, somehow a property interest attaches in any subsequent decision by the hospital or just the doctor himself. The doctor leaves the room, gets a cup of coffee, walks back in 30 minutes later and says, what was I thinking? I shouldn't have admitted that person. That nonetheless, that is now a change of constitutional dimension. And Judge Calabresi, if I can point you to anything in the record on that issue, A1372 to 1373 and A1747 to 1749, those are two different witnesses who are talking about how there's variation between hospitals and even within hospitals based on the time of day of just how much review happens up front as to whether something would be a payable bill and how much review ends up happening after the fact, after someone is initially admitted, when there's more time to carefully focus on this. And my friend, Ms. Burrs, I think in trying to press the state action issue, kept saying this is a legally mandated system, but at the end of the day, even taking all of the district court's findings as a given, it's a legally mandated system that, and again, I'm not saying that's right, but taking those findings as a given, that asks hospitals to ensure that the bills that they pay are payable ones. And I don't think that about whether something would be a properly payable bill and whether it wants to either engage in certain treatment or submit a certain bill, it doesn't transform that into state action. Unless the court has any other questions. Thank you. Well, let me ask Judge Walker or Judge Calabresi if they have any other questions for Mr. Jed. No, I'm fine. All right, Ms. Burrs, you heard Mr. Jed, and I'll give you a minute or two just to close the loop if you think it's necessary. Only regarding the state action, Your Honor, what the judge found was that utilization review, that when a patient is so it is not, this is not about what treating doctors do. This is not about treating doctors' medical decisions. This is not about their decisions about patients' care. It's not even about what they ultimately, how they ultimately decide a patient is classified. As the district court found that even when a doctor stands her ground, so to speak, and will not change a as a Part A claim to Medicare. This is why the court found that when a patient is reclassified, that is invariably caused by state action, by this legally mandated utilization review process. Thank you, Ms. Burrs. Judge Calabresi or Judge Walker, any final questions for Ms. Burrs? No. Just to say, very well argued by both sides in a very difficult case. Thank you very much. The three judges join in that expression of sentiment by Judge Calabresi. We thank him. I agree too. Let's the presider just speak for my behalf, which he's authorized to do. Thank you. We'll reserve the decision and we are adjourned.